IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL R. WICHELMAN,

                Plaintiff,

  v.

NANCY A. BERRYHILL,
Acting Commissioner, Social Security
Administration,

                Defendant.

OPINION and ORDER

18-cv-557-jdp

---

Plaintiff Michael R. Wichelman seeks judicial review of a final decision of defendant Nancy Berryhill, Acting Commissioner of Social Security, finding him not disabled under the Social Security Act. The administrative law judge (ALJ) concluded that Wichelman had the severe impairments of rheumatoid arthritis and fibromyalgia, but no severe impairments related to mental health. The ALJ determined that Wichelman had the residual functional capacity (RFC) to perform his past work as a design engineer or purchasing agent, and to perform light work, with only a few additional limitations.

On appeal, Wichelman contends that the ALJ's decision was rife with errors. The court will organize Wichelman's arguments into four groups: (1) the ALJ erred in her assessment of Wichelman's rheumatoid arthritis and fibromyalgia; (2) the ALJ erred in her assessment of Wichelman's depression; (3) the ALJ erred by ignoring evidence of severe headaches; and (4) the ALJ erred by leaving other alleged impairments out of the RFC. The court concludes that the first three grounds warrant remand.

ANALYSIS

A. Rheumatoid arthritis and fibromyalgia

The ALJ found that Wichelman had two severe impairments: fibromyalgia and rheumatoid arthritis. R. 17. After a lengthy discussion about these impairments, the ALJ concluded that Wichelman was still capable of light work, and could frequently perform fine manipulation, sit for up to six hours per day, and stand or walk for up to six hours per day. R. 23. She did not include any restrictions related to absences or time away from work. In reaching this conclusion, the ALJ disagreed with several medical opinions in the record, as well as Wichelman's own testimony about his symptoms.

The court will focus on Wichelman's treating rheumatologist, Dr. Semi Ayub, who gave two opinions about Wichelman's functional ability. First, in 2015, Ayub opined that Wichelman could perform only sedentary work, with the additional restrictions that he could sit for no more than 30 minutes at a time up to three hours a day, stand or walk for no more than 15 minutes at a time up to two hours a day, only occasionally reach, handle, or finger, and never reach overhead or push or pull objects. R. 639–44. The ALJ gave "little weight" to this opinion because she believed it contradicted Wichelman's reported daily activities, and because Wichelman's "musculoskeletal findings, particularly his gait, station, coordination, sensation and muscle strength were generally normal." R. 26.

Second, in 2017, Ayub opined that Wichelman had improved and could perform light work, but that he still had greater restrictions than those included in the RFC: he could sit for 30 minutes at a time up to four hours a day, could stand or walk for 20 minutes at a time up to two hours a day, and could only occasionally use his hands and fingers. R. 645–49. The ALJ gave "some weight" to this opinion because it "illustrate[d] improvements in the claimant's

symptoms with continued treatment." R. 26. But the ALJ did not explain why, if she gave weight to Ayub's opinions about Wichelman's improvements, she disagreed with Ayub's opinions about the extent of his improvement. The ALJ also dismissed Ayub's opinion that Wichelman would be off-task for 15 percent of the day and absent for more than four days per month due to flare-ups, R. 648, because "the record does not support [it.]" R. 26. But the ALJ did not explain how the record contradicted that opinion.

Ayub's opinions were not outliers. A state-agency physician, Dr. Syd Foster, also opined that Wichelman was limited to less than sedentary work. R. 132. And Wichelman provided his own testimony about how on bad days he is homebound due to pain. R. 67–68. But Ayub's opinion is particularly significant because for claims filed before March 27, 2017, a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight "if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)). (For claims filed after March 27, 2017, treating sources' opinions are not entitled to any specific evidentiary weight. *See* 20 C.F.R. § 404.1520(c).) "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)). Here, the ALJ did not assign controlling weight to Ayub's opinions and she did not give good reasons for declining to do so.

The Commissioner argues that the bases for the ALJ's decision can be reasonably discerned, even if the ALJ did not articulate how the record contradicted Ayub's 2017 opinion. Reading the decision generously, it seems that the ALJ gave less than controlling weight to Ayub's 2017 opinion for the same reasons that she assigned little weight to the 2015 opinion:

3

(1) Wichelman's daily activities and (2) evidence of normal tests throughout the record. For the reasons explained below, neither reason adequately supports the ALJ's decision.

1. **Daily activities**

The ALJ said that Wichelman's part-time job as a janitor, his hobbies, and ability to drive a car all demonstrate that he has the functional capacity to perform light work with fewer restrictions than those opined by Ayub. But the ALJ does not explain how any of these three activities demonstrate an ability to perform full-time work.

First, the ALJ highlighted that Wichelman works part-time as a janitor for a church. She said that because janitorial work typically involves medium exertional duties, Wichelman must be able to perform at least some medium work. R. 25. But part-time work is generally not good evidence of an ability to engage in full-time employment, *Vanprooyen v. Berryhill*, 864 F.3d 567, 571 (7th Cir. 2017), and that is especially true when, as here, the claimant works extremely limited hours and is given significant accommodations in the work place. Wichelman works on a limited, on-call basis, and his shifts are never longer than four hours. R. 41–42. He also testified that, while at work, the pastor of the church allows him to take frequent breaks whenever necessary to deal with his pain. R. 43. "A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working." *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). The ALJ also cited Wichelman's decision to work extra hours at the church over the Easter holiday in 2016, R. 25, but this information was in the record only because Wichelman complained to his doctor that the extra hours put a lot of physical stress on his body. R. 682. A single, ill-advised attempt to engage in activities beyond the claimant's

capability does not support the conclusion that he is capable of performing equivalent work full-time. *See Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014).

Second, the ALJ said that Ayub's opinions were undermined by Wichelman's hobbies. She said Wichelman likes fishing and woodworking, and that he told his physical therapist that he enjoys walking along the river in the summer. R. 24, 26. But although Wichelman used to fish, there is no evidence that he has gone fishing since the alleged onset date, and Wichelman says that he has not.[1] R. 54, 343. For woodworking, the ALJ cites evidence that Wichelman was able to stand for 4 to 6 hours to build cabinets in April 2014. R. 508. But again, this was before the alleged onset date. Even if it weren't, the ALJ does not explain how the ability to complete one project reflects an ability to stand for six hours *every* day as part of one's full-time employment. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (ALJ may not equate occasional daily activities with the rigors of the workplace). Finally, the ALJ seems to have misunderstood Wichelman's statement about walking along the river. It appears that Wichelman actually said that he liked walking *in* the river as a form of water therapy. R. 511. He made the comment in the context of his water therapy program, and his therapist responded by telling him to use a "controlled pool" instead of a river. Wichelman was not clambering across wet rocks along the riverbank as suggested by the ALJ.

Third, the ALJ said that Wichelman's ability to drive and go shopping contradicted Ayub's opinion, but she did not explain how. (The ALJ's discussion of how Wichelman's ability

---

[1] The Commissioner cites a doctor's note from September 2015 that says that Wichelman's "hobbies include a lot of things outdoors, including snowmobiling, fishing, boating, and hunting, and he likes to restore old cars." R. 824. She argues that the doctor's use of the present tense means that Wichelman was actively engaged in those hobbies. But this is a stretch. Other records also refer to Wichelman's hobbies in the present tense, but say that he can no longer perform them. R. 343.

5

to drive undermined his alleged mental impairments is discussed later in this opinion.) Wichelman reported that he was unable to drive more than 30 miles at a time, R. 340, which is consistent with Ayub's opinion that Wichelman cannot sit for more than 30 minutes. And both activities are consistent with Ayub's opinion that that Wichelman's pain is intermittent, R. 648, and with Wichelman's statement that his ability to drive or shop depends on the severity of his symptoms. R. 637. Wichelman's ability to occasionally perform activities when his symptoms subside is not necessarily indicative of an ability to perform fulltime work.

In sum, none of the daily activities cited by the ALJ support her decision to discount Ayub's opinions.

### 2. Objective medical records

The ALJ also said she assigned little weight to Ayub's opinions because Wichelman's "musculoskeletal findings, particularly his gait, station, coordination, sensation and muscle strength were generally normal." R. 26 (citing R. 426, 447, 478, 481, 576). But the four records cited by the ALJ are either cherry-picked or do not support her conclusion.

The first record cited by the ALJ is the examination conducted by state-agency consultant, Dr. Michael Lockheart, as part of Lockheart's August 2014 medical opinion. R. 423–27. This exam fails to support the ALJ's decision for two reasons. First, the ALJ assigned the August 2014 opinion little weight because Lockheart examined Wichelman prior to the alleged onset period and therefore "fail[ed] to contemplate the claimant's physical abilities during the period of alleged disability." R. 26. It's not clear why Lockheart's outdated examination is evidence that Ayub's more recent opinion is inaccurate. Second, Lockheart opined that Wichelman was limited to "less than sedentary work." R. 427. But the ALJ rejected Lockheart's final opinion, and reweighed the evidence from Lockheart's examination to provide

6

the ALJ's own opinion about what the examination meant. *See* R. 24 (weighing the positive and negative results from Lockheart's examination). In doing so, the ALJ omitted details that contradicted her final conclusion. For example, the ALJ noted that Wichelman had an intact gait and was able to walk on his tiptoes or heels, *id.*, but she did not mention that Wichelman could only do so for a limited period of time and that prolonged walking caused significant leg pain. R. 426. The ALJ may not cherry pick the record or ignore the evidence that is inconsistent with her conclusions. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). And it is well established that ALJs should not decide the significance of particular medical findings by themselves. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("[P]laying doctor [is] a clear no no, as we've noted on numerous occasions.").

The second record cited by the ALJ is a treatment note written by Ayub in February 2015 that states that Wichelman had an adequate range of motion in his knee and no signs of a psoriatic rash. R. 447. But the note also states that Wichelman tested positive for metatarsalgia (inflammation in the ball of the foot) and suffered from allodynia (abnormal pain responses to innocuous stimuli).[2] This directly contradicts the ALJ's representation that the treatment note is evidence of normal musculoskeletal findings and normal sensation. Again, the ALJ must not ignore evidence that is inconsistent with her conclusion.

The third record is documentation of Wichelman's September 2014 visit to the emergency room for rectal bleeding. The ALJ notes that during that visit doctors noted that

---

[2] *See* Mayo Clinic, "Metatarsalgia," *available at* https://www.mayoclinic.org/diseases-conditions/metatarsalgia/symptoms-causes/syc-20354790 (last visited May 10, 2019); *Allodynia*, Wikipedia, https://en.wikipedia.org/wiki/Allodynia.

7

Wichelman had full range of motion and symmetric strength and muscle bulk. R. 478, 481. But in other doctor visits, Wichelman's pain caused him to have a decreased range of motion. *E.g.*, R. 874, 878. The record shows that Wichelman's range of motion varied; Wichelman and his treating doctors have repeatedly said that his pain is intermittent with both good days and bad days. R. 67, 594, 648, 778. The ALJ cherry-picked the record by only pointing to records where he exhibited a full range of motion.

The fourth record cited by the ALJ showed Wichelman's lack of synovitis in early 2015.[3] R. 576. According to the ALJ, Wichelman previously suffered from synovitis in both wrists and almost all finger joints, but the synovitis was significantly improved through regular injections of Enbrel. R. 25. The ALJ concluded that even though Wichelman had to stop receiving Enbrel injections because they caused infections and rectal bleeding, the synovitis has not returned and Wichelman had had only trace synovitis since the injections ended. *Id.* But again, the ALJ leaves out parts of the record that contradict her conclusions: more recent medical records show that the synovitis has returned and is getting worse. R. 869, 872, 874.

The Commissioner says that the ALJ weighed all the evidence in the record and determined that, as a whole, it did not support Ayub's opinions or Wichelman's testimony. Without a different medical opinion that undermined Ayub, it was inappropriate for the ALJ to disregard Ayub's opinions and weigh the medical evidence herself. The Commissioner contends that the ALJ adopted the restrictions of state-agency consultant Dr. H. Bronstein, but that is not what the ALJ said. Rather, she said that Bronstein's opinion was entitled to only some weight, and that the ALJ based her RFC analysis on other documents in the record. R. 25–

---

[3] Synovitis is a swelling of the synovial membrane, which lines certain joints. *See Synovitis*, Wikipedia, https://en.wikipedia.org/wiki/Synovitis.

26. The record includes evidence that supports the ALJ's decision, but it also includes evidence that contradicts that decision. The ALJ inappropriately disregarded the evidence of medical professionals and analyzed the medical evidence on her own, without fairly considering contrary evidence.

On remand, the ALJ must reconsider Wichelman's rheumatoid arthritis and fibromyalgia and determine whether they warrant additional restrictions.

**B. Depression**

Wichelman says that the ALJ erred when she determined that his depression was not a severe impairment, and when she did not provide any accommodations for mental limitations in the RFC. Because the ALJ relied on her own lay opinions about mental health and an incomplete understanding of the record, the court will remand the case for a new mental health assessment.

The most significant error in the ALJ's analysis was the undue emphasis that she placed on Wichelman's ability to drive. For example, as one of her reasons for concluding that Wichelman's depression caused only mild limitations in concentration, persistence, or pace, the ALJ said:

> He drives, which *requires substantial attention and concentration*, in order to understand, remember, and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds.

R. 19 (emphasis in original).

Wichelman's driving appears to have been the ALJ's primary reason for concluding that his depression was not a severe impairment. She refers to it throughout her decision and dedicates two paragraphs to an extended discussion about why driving requires high-level mental functioning. R. 19–20. But the ALJ did not cite any medical opinions or evidence that

9

connected Wichelman's ability to drive to his mental abilities. Instead, she voiced her personal opinion that, as a general rule, claimants who are capable of driving cannot have severe mental impairments. That is not a determination that an ALJ is qualified to make. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("[T]he ALJ seems to have succumbed to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was inconsistent with a diagnosis of mental retardation because no expert offered evidence to that effect here.").

Because the ALJ's unsupported opinions about driving were so central to her decision, that alone would be grounds for remand. But the ALJ also erred even in parts of her analysis that did not rely on Wichelman's ability to drive. For example, the ALJ said that Wichelman had no limitation in his ability to interact with others because he had a girlfriend, lived with family members, and was able to successfully interact with doctors and authority figures. R. 18–19. But as the ALJ acknowledged, Wichelman's depression was caused in part by the strained relationship he had with his girlfriend and son. R. 17 (citing R. 431). In any case, it would be a stretch to assume that a relationship with family members would be evidence that Wichelman can also sustain a professional relationship with coworkers or supervisors. And Wichelman's brief interactions with doctors or other authority figures does not show that Wichelman would be able to interact with the public every day, throughout an entire workday.

In contrast to the ALJ's decision, every mental health specialist who reviewed the record opined that Wichelman had more severe mental health limitations. For example, state-agency consultants Dr. Esther Lefevre and Dr. Thomas Yared both opined Wichelman had moderate impairments in social functioning, R. 135, 173, and Yared opined that Wichelman also had

moderate impairments in concentration, persistence, or pace. R. 167. But the ALJ mentioned these opinions only in passing:

> In reaching this conclusion, the undersigned considered the opinions of the State agency psychological consultants at the initial and reconsideration levels. (Exhibit B2A, B4A, B6A, B8A). The undersigned notes the consultants evaluated the claimant's mental impairment using the prior, inapplicable listing criteria. However, using the current, applicable listing criteria, the undersigned finds the claimant's cessation of formal mental health therapy and consistent demonstration of normal orientation, thoughts, stream of mental activity, attention, concentration, memory, insight, and judgment supports that his mental impairments are nonsevere. (See Exhibits B2F pgs. 2-3, Hearing Testimony).

R. 20.

From this discussion, it's not clear what weight the ALJ assigned to the opinions, or whether she incorporated any part of them into her decisionmaking. Apparently the ALJ assigned no weight to the opinions because they used outdated listing criteria. But she also cites the 2014 opinion of Dr. Travis Hinze, which is older than Lefevre's or Yared's opinions.[4] And Hinze opinion fails to support the ALJ's decision for two additional reasons. First, the ALJ assigned it limited weight, R. 20–21, so it's not clear why she is relying on it as a reason to discount other opinions. Second, Hinze also opined that Wichelman had moderate impairments in his ability to respond to others, R. 422, so his opinion actually reinforces Lefevre's and Yared's opinions.

The Commissioner contends that because Wichelman responded positively to mental health treatment, the ALJ found that his depression did not last for 12 consecutive months as

---

[4] The ALJ cited "Exhibit B2F, pgs. 2–3," but those pages are a blank authorization form to disclose documents to the Social Security Administration. R. 398–99. It appears that the ALJ meant to cite Exhibit B4F, which she cited earlier in the opinion. R. 18.

required to qualify as a disability. *See* 20 C.F.R. §§ 404.1509, 416.909. But the Commissioner is referring to the ALJ's discussion of Wichelman's post-traumatic stress disorder, for which he stopped receiving treatment for in 2013. R. 17. The ALJ did not say that Wichelman's depression lasted for less than 12 months. And even if she had, it would not be a reason to find that Wichelman's depression was not severe; severity and duration are separate requirements and Wichelman has already met the duration requirement with his other impairments. *See Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("[the] duration requirement is not part of the definition of 'severe.'") (citing 20 C.F.R. § 404.1520).

Alternatively, the Commissioner argues that any error in the mental health analysis was harmless because the vocational expert testified that there were unskilled jobs available for someone with Wichelman's physical limitations. R. 74–75. But an "error is harmless only if the court is convinced that that ALJ would reach the same result on remand." *Hill v. Colvin*, 807 F.3d 862, 869 (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)) (internal quotation omitted). And because not all mental limitations can be accommodated by a restriction to unskilled work, the court is not convinced that the result would have been the same had the ALJ concluded that depression was a severe impairment. *See e.g., Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014) (noting that a restriction to unskilled work is usually not adequate to account for moderate limitations in concentration, persistence, or pace). On remand, the ALJ must reconsider Wichelman's mental impairments.

## C. Headaches

Wichelman says that the ALJ erred by failing to include a restriction related to his headaches. Wichelman reported that about once a week, he has a migraine that lasts for two to three hours and keeps him bedridden. R. 99, 103, 424. The record shows that Wichelman

takes medication specifically for headaches, R. 789, that an MRI revealed possible brain damage related the headaches, R. 836, and that Dr. Ayub listed headaches as one of Wichelman's conditions in his 2017 opinion. R. 650. But the ALJ mentioned none of this evidence in her decision. On remand, the ALJ must review Wichelman's headaches and consider whether they warrant any additional restrictions.

**D. Other restrictions excluded from the RFC**

Wichelman makes two additional arguments that warrant a brief mention. First, Wichelman says that the ALJ should have more thoroughly explained why she did not find that colitis was a severe impairment. But it appears that Wichelman suffered from colitis-like symptoms for only a short period in 2014, after which his symptoms abated, and follow-up sigmoidoscopy found no evidence of colitis. R. 443. Wichelman does not point to any evidence that he continues to suffer from colitis, nor does he explain what additional restrictions are required to account for colitis. A claimant is not entitled to relief on appeal if he "does not identify medical evidence that would justify further restrictions." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). This is not an independent ground for remand.

Second, Wichelman says the ALJ erred by failing to consider the effect of his obesity on his other impairments. He argues that obesity can exacerbate arthritis, fibromyalgia, and depression. But again, Wichelman does not point to any evidence that his obesity would justify further work restrictions. Speculation that obesity may contribute to other problems is not enough to warrant reversal on its own. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). This too is not an independent ground for remand.

Nonetheless, if Wichelman can point to specific evidence that would justify further restrictions due to colitis or obesity, he is free to present that evidence on remand.

### E. Conclusion

On remand, the ALJ should (1) reconsider the opinions of Wichelman's treating rheumatologist, Dr. Semi Ayub, and determine whether his rheumatoid arthritis and fibromyalgia warrant additional restrictions; (2) reconsider the effects of Wichelman's depression; (3) consider the effects of Wichelman's headaches and whether they warrant additional restrictions.

### ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, denying plaintiff Michael R. Wichelman's application for disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered May 31, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge